The question to be determined in this case is, whether the contracts entered into between the plaintiff and the commissioner of public works, on the behalf of the defendants were valid and binding. Their validity is assailed on the ground that there was no publication for proposals, as required by the city charter. This charter is entitled: "An act to reorganize the local government of the city of New York," and, among other things, contains the following provision: "All contracts to be made or let by authority of the common council, for work to be done, or supplies to be furnished, except printing and advertising, and all sales of personal property in the custody of the several departments or bureaus, shall be made by the appropriate heads of departments under such regulations as shall be established by ordinances of the common council. Whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which *Page 313 
work or job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than $1,000, the same shall be by contract, under such regulations concerning it as shall be established by ordinance of the common council, unless by a vote of three-fourths of the members elected to each board it shall be otherwise ordered; and all contracts shall be entered into by the appropriate heads of departments, and shall be founded on sealed bids or proposals made in compliance with public notice, duly advertised in newspapers of the city; said notice to be published at least ten days; and all such contracts, when given, shall be given to the lowest bidder, the terms of whose contract shall be settled by the counsel to the corporation as an act of preliminary specification to the bid or proposal, and who shall give security for the faithful performance of his contract in the manner prescribed and required by ordinance; and the adequacy and sufficiency of this security shall, in addition to the justification and acknowledgment, be approved by the comptroller." (Laws of 1870, chap. 137, p. 391, § 104.)
It will be observed that the act in question embraced the entire "local government" of the city of New York, which necessarily would comprehend and include all its various departments and everything connected with the works necessary to be performed in carrying out all public improvements, entirely independent of and without any regard whatever to any exception made by other provisions of law.
It is claimed that the contracts in question, were lawfully entered into with the commissioner of public works and were not within the meaning of the section cited, by reason of their being made by the authority of the provisions of chapter 213, Session Laws of 1871. This last act, as its title plainly indicates, was designed to extend the distribution of the Croton water through the city of New York and to lay the necessary mains to deliver it at higher elevations as well as to provide for the expense of water meters. By the first section of the last mentioned act the mayor, aldermen *Page 314 
and commonalty of the city, by the commissioner of public works, are authorized to expend in laying pipes to extend the distribution of Croton water through the city and to furnish a sufficient supply to the institutions in charge of the departments of public charities and correction, etc., a sum not exceeding $1,500,000. The second section makes it the duty of the comptroller and authorizes and directs him to borrow upon the bonds of the city authorities such amount as in the judgment of the commissioner of public works may be necessary to execute the works not exceeding the sum named. These bonds are to be signed by the mayor and comptroller, countersigned and sealed by the clerk of the common council, and to be paid by a tax to be levied by the board of supervisors on real and personal property as the act provides. The commissioner of public works was vested by the act in question with power to expend the money; the comptroller was to borrow the money upon the bonds of the corporation and the board of supervisors to raise it by a tax on property. Although the act confers upon the commissioner full power to expend the money, it does not expressly provide, that it vests in his discretion to determine how or in what manner the work shall be done. It confers upon him no direct authority to have the work executed by the day or the job or by contract duly made. It would, therefore, appear to be left without any special directions and subject to any rule which the law had provided, and as section 104 before cited provides that all work which requires the expenditure of more than $1,000 shall be by contract, under such rules and regulations as the common council shall provide, unless by a vote of three-fourths it is otherwise ordered, notice of which is to be advertised for ten days, I am of the opinion that the expenditure of the money is controlled by this last provision. There are numerous reasons why this view of the subject is sustained. In the first place, the two acts are not in conflict, and the act of 1870 is entirely consistent with the act of 1871. Although they both relate to the same subject, they may very properly be *Page 315 
regarded as in pari materia. Both may be considered together and effect given to each of them in this way. (Rogers v.Bradshaw, 20 J.R., 735, 744; McCartee v. Orphan Asylum, 9 Cow., 437, 507; Rexford v. Knight, 15 Barb., 627, 642.) While the act of 1871 provides for the expenditure, the issuing of bonds, raising the money and the taxation for the payment of the bonds, the act of 1870 makes provision as to the method and manner in which the contracts shall be made. They are consistent with each other and can be carried into effect with entire harmony. If it had been the intention of the legislature as is claimed, to confer upon the commissioner the entire control of the work in question, it is a fair and reasonable intendment that this would have been expressed by some provision of the act itself. It makes no provision for the work to be done in any other or in any different manner than that which is recited in the charter. And this is not, I think, a case where any thing is to be implied. The provision in the act of 1870 (§ 77) to the effect that when "`street department' or `Croton aqueduct board' shall occur it shall be deemed and construed to mean the department of public works and the commissioner thereof," is in no way antagonistic to the interpretation placed upon section 104. Nor, in my opinion, does the provision of the fourth section in chapter 383 (S. Laws of 1849) creating the Croton aqueduct board, and which section makes the board responsible for the supply of water and the good order and security of all the works, and generally for the successful operation of the work performed and for persons employed, nor of section 77 of the charter of 1870, by which this personal responsibility was continued and imposed on the commissioner, conflict with the enactment in section 104. And I am unable to discover how this latter provision can in any way impair, affect or interfere with the responsibility of the commissioner because the work is to be advertised and given to the lowest bidder. If contracts are properly and carefully made under this enactment and vigilance and attention given *Page 316 
to the supervision of the same, there is no valid reason why they should not be as carefully guarded and as safe and secure, and the work as skillfully performed and carried into effect as when it is done by virtue of contracts which have not been advertised and not offered or taken by the lowest bidder. There is quite as much fraud, favoritism and partiality practiced in the latter cases as in any other, and even greater opportunities are furnished for imposition, extravagance and a wasteful expenditure of the public money. It is not to be assumed that irresponsible persons would be allowed to take contracts when advertised, and the commissioner was vested with ample powers to guard against any such contingency and to see that any necessary provision was inserted to protect the public and to compel the contractor to perform his duty with the most rigid strictness and fidelity. The contract itself should provide, as was done here, for proper directions, and the supervision by competent engineers, under the control of the commissioner, as well as that the contractors be subject to obey all orders and directions of the chief engineer, or some suitable officer of the department. It is by no means manifest that the work required to be done was of such a peculiar character, and so nice and difficult, as to demand such extraordinary skill and ingenuity that it could not fairly be made a matter of competition among those who were accustomed to perform such jobs; and it cannot, I think, be doubted that a proper and careful performance of the same could be secured by a rigid supervision over the contractors, and a bond with appropriate conditions would provide a full indemnity against carelessness and unskillfullness, and ample security against all loss or damages which might, perchance, be occasioned thereby. The enactments to which we have been referred, which authorize the construction of additional public works connected with the Croton aqueduct, and the distribution of the water, the payment of the work done, which recognize the personal responsibility of the members of the Croton aqueduct board, or of the commissioner of public works cannot, I think, *Page 317 
affect the construction to be placed upon the provisions discussed. Nor does it, in my opinion, alter the case, because the work in question was to be paid for by money raised by issuing bonds of the city, as the law provided, or because the common council was vested with no power, under its charter, directly to raise money for any such purpose, or in any other manner than was provided by legislative enactment, or had no authority to contract for new works; and the department of public works was vested with the control of the structures and property connected with the supply and distribution of the Croton aqueduct water. These considerations can have no weight in authorizing the interpretation of a statute different from its plain import and intention. The language of section 104 is broad and comprehensive, and it should receive a liberal construction, having in view the purposes which it was designed to accomplish. The first part of the section refers to "all contracts to be made or let by the authority of the common council," and requires that they shall be made by the appropriate heads of departments; but this does not limit the effect of the provision, for the very next clause provides for "any work which is necessary to be done to complete or perfect a particular job," which may very properly include the work provided for in the act of 1871, which was intended to perfect and complete the supply of water through the city, as therein provided, as well as to include all work done for the corporation, of any name and nature whatsoever, without regard to what precedes it, or whether ordered directly by the common council or by one of the departments. And, as if to render the provision more certain, complete and emphatic, it again provides that "all contracts shall be entered into by the appropriate heads of departments," without any restriction or limitation whatever. Surely this comprehends every kind of contract which may emanate from any of the departments. And every one of these, unless the common council by a vote of three-fourths otherwise directs, must be founded on sealed bids or proposals made after notice has been given as required by the act. *Page 318 
The department of public works is not relieved from these limitations of the charter; and while the act of 1871 provides the means to meet the outlays which must be expended for the improvement, the mode of the expenditure must be followed as the charter prescribes. The spirit of the section is founded upon the idea that all contracts are to be made by and through the departments; and contracts made by "the mayor, aldermen and commonalty of the city of New York" under the act of 1871, are made by the authority of the common council as much as any provided for in section 104, for the reason that all contracts are made by the heads of departments. The section referred to is one of great importance to the welfare and interests of a large municipal corporation, acting through its public officials and agents, and was designed to establish a policy which should be carried into effect without regard to technicalities or a narrow interpretation which would render the law of no avail.
The case of The People v. Van Nort (64 Barb., 204), upon which the plaintiff relies, is not in conflict with the views expressed. In that case, the law authorized the commissioner of public works, in his discretion, to cause water-meters, ofapproved pattern, and suitable for the purpose, to bedesignated by him, to be placed in certain buildings which were named; and it was held that this provision and section 114 of the act of 1870 were in conflict with each other; and the relator having furnished the water-meters to the commissioner, at his request, and in good faith, relying on this statute, a mandamus would lie. It will be seen that the commissioner was vested with a discretion; that the water-meters were to be of an approved pattern, which could not well be obtained by advertising for the lowest bidder; that they were to be selected by the commissioner himself. He was thus precluded from advertising, while no discretion whatever is given to the commissioner under the act of 1871.
Some remarks are made by the learned judge which restrict the operation of section 104 to contracts, made or let by authority of the common council, but they were not necessary *Page 319 
to the decision of the case, and are, therefore obiter. Besides, they do not, in my opinion, place a proper construction upon the one hundred and fourteenth section of the act. The principle decided in Peterson v. The People (17 N.Y., 449), has no application to the case at bar, and is not in conflict with the doctrine herein laid down. The result of the discussion had is, that no authority has been conferred by either the common council or the legislature to perform the work in question in any other manner than that required by the city charter. The commissioner had no discretion whatever, and was bound to follow the statute; and, although all the parties may have acted in entire good faith, and the work have been properly performed, no recovery can be had upon the contracts in violation of the limitation of the powers of the officer who acted on behalf of the corporation.
The judgment of the General Term was right, and must be affirmed with costs.
For reversal: CHURCH, Ch. J., ALLEN, RAPALLO and ANDREWS, JJ.
For affirmance: GROVER, FOLGER and MILLER, JJ.
Judgment reversed.