STEPHEN HUNT, RESPONDENT, v. IRA RAPLEE, APPELLANT.

*Deed — construction of the word "tow-path" when used as a boundary line — measure of damages for a breach of the covenants in a deed, stated.*

In November, 1880, the defendant conveyed to the plaintiff a house and lot in Penn Yan, lying between Lake street and what was formerly the Crooked Lake canal, the lot being described as bounded on the north by the "tow-path." At the time of the conveyance the canal had been for several years abandoned, and the land owned by the State had been conveyed by it to a railroad company. Upon the trial of this action evidence was given tending to show that at the time the deed was executed a "tow-path" was visible, and that the canal lands owned by the State extended some twenty-five feet south of the place where the tow-path appeared to be. While the parties were in negotiation the defendant took the plaintiff and his wife on the premises and showed them the lot in the rear of the house, and the plaintiff then saw, but did not particularly notice, the tow-path. The plaintiff having been evicted from that portion of the premises described in the deed which belonged to the State, brought this action to recover damages for a breach of the covenants of warranty, seizin and quiet possession contained in the deed.

*Held*, that he was entitled to maintain the action.

That the contention of the defendant's counsel that the word "tow-path," as used in the deed, was a general and not a particular designation of the north boundary of the premises, and that it included not merely the beaten track, but also the adjacent lands, proper and necessary for its construction and maintenance, in other words, the strip of land owned by the State south of the canal, could not, under the circumstances of this case, be sustained.

That as the State owned the land taken for canal purposes in fee, the general rule applicable to the case of a conveyance of land, bounded on an established highway, was not applicable to this case.

Upon the trial the plaintiff was allowed to recover damages, based upon the idea that the measure of damages was the difference in value between the entire premises described in the deed and the portion remaining after the eviction.

*Held*, that the court erred in so charging.

That the measure of damages, in actions of this description, is such part of the original price as bears the same ratio to the whole consideration as the

value of the land, to which the title has failed, bears to the value of the whole premises.

Ordinarily the recovery does not include subsequent improvements or rise in market value, but it is limited to an aliquot part of the value of the entire premises, as fixed by the price paid, with interest not exceeding six years.

APPEAL from a judgment, entered on a verdict in favor of the plaintiff rendered at the Yates Circuit, and from an order denying a motion for a new trial on the minutes.

*Charles S. Baker*, for the appellant.

*M. A. Leary*, for the respondent.

SMITH, P. J.:

Action for breach of covenant of warranty, of seisin and quiet possession. The covenants were contained in a deed, executed in November, 1880, whereby the defendant and his wife, in consideration of the sum of $750, conveyed to the plaintiff a house and lot on the northerly side of Lake street, in the village of Penn Yan, lying between said street and what was formerly the Crooked Lake Canal. The deed described the lot as bounded on the north by the " tow-path." The canal had been abandoned several years before the deed was executed, and was not in use, and the State had conveyed the land to a railroad company; but there was evidence given at the trial tending to show that the " tow-path " was visible at the time of the conveyance, and that the canal lands owned by the State extended some twenty feet south of the tow-path, or of the place where the tow-path appeared to be at the time of the execution of the deed. From that portion of the deeded premises, which belonged to the State, the plaintiff was subsequently evicted by the grantee of the State, and this action was brought in consequence. The answer denied certain allegations in the complaint, and alleged that at the time of the conveyance neither party knew exactly where the north line of the lot or the south line of the tow-path was located, but the intention of both parties was that the deed should convey so much as the defendant owned from Lake street northwardly towards the tow-path, and no more, and that if it should be held " that the language employed in the deed covers any of the State lands on the northerly side of the premises described therein," it was the result of a mutual mistake, and the

answer demanded that the deed be reformed in that particular. The issue as to the alleged mistake was litigated and submitted to the jury, and upon that branch of the case no question is now presented.

The principal question in the case is presented by the contention of the learned counsel for the defendant, that the description in the deed, properly interpreted, carries the plaintiff no farther north than to the southerly line of the canal lands, the tow-path having been situated on the south side of the canal. His argument is understood to be that the word " tow-path," as used in the deed, is a general and not a particular designation of the north boundary of the premises, and that it includes, not merely the beaten path, but also the adjacent lands proper and necessary for its construction and maintenance ; in other words, the entire strip of land, owned by the State, on the tow-path side of the canal. There may be cases in which the interpretation contended for should prevail; whether this is one of them depends, to a great extent, in our opinion, upon the particular circumstances. When the parties were in negotiation, the defendant took the plaintiff and his wife on to the premises and showed them the lot in the rear of the house. It is apparent from the testimony that the tow-path, or the beaten track was then visible, and that the plaintiff saw it, although, as he testified, he did not notice particularly its location with reference to where the railroad track was that had been built subsequently. The plaintiff testified that on that occasion " nothing whatever was mentioned about any State line, or any land belonging to the State or tow-path. There was a tow-path there, and that was all I understood about it. The words ' State land,' that he was going to deed me to the State land, was not mentioned at all. I had no idea where the State lands were, but I could see the tow-path. ' When Raplee and I were over there talking there wasn't any line located where the deed was to go, not a word ; and it was all open so that I could look down to the water, except a little fence on the north side. I most certainly want the jury to understand there wasn't a word said about where the north line was when we were there ' " The fence spoken of was elsewhere described, by the same witness, as a length or two of an old fence standing about a foot and a half north of one of the outhouses, which was stated to

be four or five feet from the main building. Soon after that interview the parties met at the office of Mr. Andrews, who drew the deed. The plaintiff's version of what then occurred is as follows : " My wife and I sat away back in the office, and Mr. Raplee and Andrews were talking together ; I think Raplee went and got another deed ; we didn't know what they were really talking about, until my wife and I heard Mr. Andrews say something about the tow-path, but we couldn't understand what it was they were talking about ; it was not stated in my hearing in the office by Mr. Andrews that he considered that the tow-path included all the land belonging to the State, and Raplee did not say he would only deed me what he himself owned ; that he would only deed to the State land ; I did not hear anything said by Raplee to Andrews upon the subject as to where the line was." This testimony was controverted, but in view of the manner in which the case was disposed of by the court, we must regard the statement of the plaintiff as having been accepted as true. The court charged the jury that the plaintiff was entitled to recover, unless there was mutual mistake in drawing the deed, thus taking from the jury every question of fact except that of mistake and the amount of damages. To that charge there was no exception. The jury having found that the description was not the result of a mutual mistake, the only question is whether the parties intended by the use of the word " tow-path " to designate the south line of the State land as the boundary. Whether that question is one of law, purely, or a mixed question of law and fact, it is obvious from the course, of the trial, that it was left to the decision of the judge. If it was a question of fact, his decision is conclusive. If it was a question of law merely, arising upon a given state of facts, then the statement of those facts, given by the plaintiff's witnesses, although controverted, must be regarded as having been adjudged to be true.

Now, as has been said, there may be cases where the construction contended for by the defendant's counsel would apply. If in this case the limit of the canal land had been marked by a fence or other visible boundary, to the knowledge of both parties, it might well be held that the parties, by the use of the word " two-path," meant the land inclosed within such boundary, and not the mere beaten path,

as the term "highway" would be held to include the entire width of the road as laid out and fenced, and not merely the traveled track. But here there was nothing to indicate the location of the boundary of the State land, or that the State owned any land south of the beaten track of the tow-path. The State map, which the defendant's counsel put in evidence, and on which he relies very much in his argument, was not referred to in the deed, and does not appear to have been known to the parties. The fact that the location of the beaten track was changed to some extent from time to time when the canal was in use is immaterial, the question being whether the deed referred to the visible worn track as it appeared at the time of the conveyance.

The appellant's counsel cites the case of *Northrop* v. *Sumney* (27 Barb., 196), which holds that when a grantor bounds the land which he conveys, by the land of another, he does not undertake that the visible division fence is upon the true line, but he leaves the true line to be ascertained. If Raplee, in deeding to Hunt, had bounded by the lands of the State, the case cited would have been an authority for saying that he could not be held to have undertaken that the visible tow-path was the true line. But suppose, in the case cited, the land had been bounded by the fence, could it have been successfully claimed that the grant extended to the actual boundary line beyond the fence?

The appellant's counsel contends that the case is analogous to that of a highway named as a boundary, and refers to the general rule that in such case the center of the highway, as laid out and established, is the boundary, unless the language excludes it and limits the grant to the exterior line. That rule is founded upon the presumption that the ground was originally taken from the adjoining owners, and for the sole purpose of being used as a thoroughfare. (*Dunham* v. *Williams*, 37 N. Y., 251.) But the State owns her canals *in fee* (*Rexford* v. *Knight*, 15 Barb., 627; S. C. affirmed, 11 N. Y., 308, 314), so that in the case of a deed bounded by the "canal" or the "tow-path" there can be no presumption ordinarily that the grant extends beyond the exterior line of the canal or tow-path. The case of *Dunham* v. *Williams* (*supra*) is cited by the defendant's counsel as an exception to the rule above stated as to the presumption that a grant bounded by a *highway*

goes to the center. That was an action of ejectment to recover to the center line of lands that had been taken years before for a highway. The highway had been abandoned. The plaintiffs based their claim to recover upon the fact that the deed through which they deduced title bounded their land on the highway. But it appearing that the highway was laid out on land belonging to another, it was held that the presumption was repelled, and the plaintiffs could not recover. But that case, we conceive, has no application here, except as an authority for holding that Hunt, by his deed, acquired no title beyond the southerly limit of the lands of the State, and that fact constitutes his grievance. We are of the opinion that by the terms of the deed, interpreted in the light of the attendant circumstances, the northern boundary designated was the towpath or beaten track, as and where it existed at the date of the conveyance.

These views would lead to an affirmance of the judgment, but for a question presented by one of the exceptions. The plaintiff, testifying in his own behalf, was asked how much, in his judgment, the premises were worth, with the land in the rear taken off. What then occurred is stated in the printed case as follows: "Mr. Baker" (defendant's counsel) "objected as incompetent and immaterial, and is not the proper measure of damages; that the rule of damages is the value of the land taken." "By the court: My impression is, that the rule of damages in this case is the value of the property taken, or the value of the property from which there has been an eviction, considered as a portion of the whole lot conveyed." "By Mr. Leary" (plaintiff's counsel): "I claim the rule of damages to be the difference in the value of these premises as they were with this land annexed and as they are without it." "By the court: That is my opinion. I think you should prove the value at the time of the purchase of the whole, and then the value of that which remains." "Mr. Baker excepted." The question was then repeated in the following form: "How much, in your judgment, are these premises worth with the land taken off? What would it be worth in the market?" A. "It would only be worth half to me." Q. "Not to you, but to any man wanting it as a place of residence." A. "If I am allowed to say, the place has cost me, with the improvements I have put on it, nine hundred dollars, and

anybody can take it for half of that money, if they will take it now." Q. "I would like to have you answer my question. How much less are the premises worth in consequence of this loss of the land fourteen inches south of the line?" A. "Three hundred dollars."

It is obvious from this transcript of the case that the defendant's objection was overruled and the testimony offered was received, upon the idea that the measure of damages is the difference in value between the entire premises described in the deed and the portion remaining after the eviction. That is not the rule. The measure of damages in actions of this description, we understand to be such part of the original price as bears the same ratio to the whole consideration, that the value of the land to which the title has failed bears to the value of the whole premises. (*Morris* v. *Phelps*, 5 Johns., 49, *Giles* v. *Dugro*, 1 Duer, 331.) Ordinarily, the recovery does not include subsequent improvements or rise in market value, but it is limited to an aliquot part of the value of the entire premises as fixed by the price paid, with interest for not exceeding six years. (*Staats* v. *Ten Eyck's Exrs.*, 3 Cai., 111; *Pitcher* v. *Livingston*, 4 Johns., 1; *Kinney* v. *Watts*, 14 Wend., 38, and cases there cited by SUTHERLAND, J., p. 41; *Kelly* v. *Dutch Church of Schenectady*, 2 Hill, 105, 116; Rawle on Cov. [4th ed.] p. 235.) The reception of the testimony was error.

The error cannot be regarded as cured by what followed. The examination of the witnesses subsequently called on both sides, upon the subject of value, seems to have been conducted with a view to the rule above laid down as the true one, and the judge charged the jury in accordance with such rule. And there was unobjectionable testimony given which warranted the amount of the verdict. But the improper testimony above pointed out was allowed to be considered by the jury. It is impossible to say that it did not influence the verdict. The error, therefore, was not cured. (*Erben* v *Lorillard*, 19 N. Y., 299.) Had the objectionable testimony been withdrawn, had the jury been directed by the court to disregard it, the error, perhaps, would have been cured. (*Mandeville* v. *Guernsey*, 51 Barb., 99, S. C. affd., 50 N. Y., 669.)

It was probably error to sustain the objection taken to the question put by the defendant's counsel to the plaintiff, on cross-

examination, as to whether, when he was looking at the premises, Raplee did not tell him that he did not know where the north line was. The question related to an interview and transaction upon which the plaintiff had given testimony in his own behalf, and the inquiry seems to have been within the strict limits of a cross-examination. But it is unnecessary to decide the point definitely, as there must be a new trial, and it may then be avoided.

For the error above pointed out, the judgment and order should be reversed and a new trial granted, costs to abide the event.

HAIGHT and BRADLEY, JJ., concurred.

Judgment and order reversed, and new trial ordered, costs to abide event.