# COURT OF APPEALS.

## AMOS P. GRANGER, appellant, agt. THE CITY OF SYRACUSE, respondents.

The *opening and widening of a street* in the city of Syracuse is not such an improvement as the common council are prohibited from making *without the application or consent of the owners of the property* upon the line of the improvement.

Where it appears from the *report of the commissioners* appointed to assess the damages for the land proposed to be taken in such case, that they directly adjudicated upon the plaintiff's right to damages for the land proposed to be taken from him, and reported generally,[except in three instances where they either named or described the owners, that as to the other property taken " the owners thereof are fully compensated for the benefits to the adjoining land owned by them respectively :"

*Held*, that this award was warranted, in substance, by the statute under which the commissioners proceeded,as that empowered them to deduct the benefits from the damages, (*Laws*, 1857, *chap.* 136, § 2.) And it has been settled that the owner's right to compensation, which the constitution has secured, may be satisfied in that way. (*Griffin* agt. *Mayor, &c., of Brooklyn*, 4 *Comst.*, 419.)

It was not necessary to the validity of the action of the commissioners that the plaintiff should be *named* in their report. All that was required was that it should appear that his right to compensation had been considered and adjudicated by the commissioners. The constitution requires only that the owner shall be justly compensated for [his property when it may be taken for this purpose ; and that can be done as well by describing or referring to him, as it can by naming him.

*June Term,* 1869.

APPEAL from a judgment of the general term in the fifth judicial district.

R. RAYNOR, *for plaintiff, appellant.*

SEDGWICK, ANDREWS & KENNEDY, *for defendant, respondent.*

DANIELS, J.—No substantial foundation appears to exist for the objection that the proceedings taken for the opening and widening of Clinton street, in the city of Syracuse, are void on account of the omission of the owners of the property upon the line of the street to petition for improve-

ment. For this was not such an improvement as the common council are prohibited from making without the application or consent of the majority of the owners of the property upon the line of the improvement. This restriction relates to such strictly local improvements as are confined in their benefits to the localities in which they may be made. And for that reason, the expenses of making them are assessable only upon the property existing in the locality benefited by them. (*Laws of* 1857, *Chap.*, 132, *Title* 7, § 1).

The opening and widening of a street is an improvement of a different character. For while it may improve the property, and promote the convenience of the locality through which it extends, and on that account, constitute an important local improvement, it also, by affording an avenue for travel and transit to the public, produces benefits and advantages rendering it a public as well as a local improvement. And where this latter purpose may be subserved by laying out, opening, or widening public streets, as it commonly is, the duty of promoting and securing it is paramount to the mere convenience and profit of the locality through which it may be done. Cases may, and no doubt frequently do, occur where the convenience and interests of the public and the owners of the property affected by improvements of this nature, may be antagonistic and conflicting, and where, on that account, the laying out, opening, and widening of streets would be undesirable with the latter, though positively and necessarily required by the former. If the work could not be performed without the assent or application of the owners of the property in such cases, great public inconvenience would be occasioned by that inability. It is not therefore to be supposed that the legislature would be disposed to subject improvements of this public character to a restraint of the kind presented by the objection.

The act itself does not render the power of the common

council to open and widen streets dependent upon the application or consent of a majority of the owners of the property on the line of the improvement, but, by entirely independent provisions of the charter of the city, provides for the manner in which work of that character is to be done. These provisions do not contemplate any precedent application or consent on the part of any persons owning land along the line of the street to be improved; but they confer such authority upon the common council of the city, as empowers that body to initiate and consummate the enterprise at its own instance and of its own motion.

Before that can be done, the common council is required to cause the street to be surveyed, and permanent monuments to be placed showing the lines thereof, and a map to be made and filed. After that has been accomplished, then the council is empowered to declare, by resolution, its intention to take and appropriate the property required for the proposed improvement. And nothing whatever beyond that is required to be done, either on the part of the council or on the part of the owners of the property, or any of them, to entitle that body legally to make that declaration. When the resolution has been adopted declaring it to be the purpose of the council to take the land, the subsequent steps in the proceedings are fully and clearly provided by which the title is to be acquired and the work of laying out, opening, or widening the street fully and completely performed. (*Laws of* 1857, *vol.*, 1, 135–139).

And the expense attending it is not rendered exclusively local, as that which may properly be deemed a local improvement is, but the commissioners appointed for its assessment, are required to direct such part of it to be assessed upon the city at large, and such part locally, as they shall deem best. (*Id.*, 137, § 4). And that course was pursued in the present instance, for the larger portion of the expense was shown to have been assessed upon the city. The objection that the work could not lawfully be undertaken

without the application or assent of the majority of the persons owning property on the line of the street must therefore be overruled.

· The case shows that the portion of the plaintiff's premises, which the common council resolved to appropriate to the opening and widening of this street, was described upon the map previously made and filed, according to the requirements of this portion of the charter of the city. And that notice was given to him of the resolution adopted by that body, declaring its purpose to take and appropriate that property to the widening of the street. And of its intention to apply to the county court for the appointment of commissioners to assess the value of the land to be taken, and the advantages that would result to him from the use and appropriation of it to the purpose for which it was to be taken.

On the day mentioned in the resolution, the application was made and the commissioners were appointed by the county court. These commissioners examined the premises, and afterwards made their report to the common council. In this report it is stated that the several parties whose property was taken attended them. And if they did, the plaintiff must have been among the number; if he was not the statement was untrue, and that should not be assumed in a collateral action, without any evidence tending to establish that conclusion. By the resolution served upon the plaintiff, he was so far made a party to the proceedings themselves, as to render them *prima facie*, if not conclusive, evidence against him, particularly when they are drawn in question in an independent action on his part.

These commissioners awarded damages in three different instances, for property required to be appropriated to the improvement of the street. And the persons to whom such damages were awarded, are either named or described in such a manner as to leave no doubt concerning their identity. As to the other property taken for the improve-

ment, they reported generally that, "the owners thereof are fully compensated for the benefits to the adjoining land owned by them, respectively," and this is objected to by the plaintiff, as being so substantially defective as not to confer upon the defendant any right to take and appropriate his property.

By taking the report altogether, it does appear that they not only intended to, but that they also did directly, adjudicate upon the plaintiffs' rights to damages for the land proposed to be taken from him for the purpose of widening the street. For the general statement contained in their report, which has already been mentioned, shows that they deemed all the persons not previously named or described by them, to be so far benefited by the improvement as to be fully compensated for the damages sustained by them arising out of the taking of their land. And the plaintiff was very clearly included in that statement. This award was warranted in substance by the statute, under which the commissioners proceeded, for that empowered them to deduct the benefits from the damages. (*Laws of* 1857, *Chap.*, 136, § 2). And it has been settled that the owner's right to compensation which the constitution has carefully secured, may be satisfied in that way. (*Griffin* agt. *Mayor &c., of Brooklyn*, 4 *Com.*, 419, 435, 436).

It was not essential to the security of the plaintiff's right to compensation that the amount of it should have been specified in money, as long as it was found by the commissioners to be precisely equalled by the benefits secured to him. That they were not required to do by the statute. For it required them to award to him such damages, and such only as in their opinion should compensate him for the land taken from him, after deducting the benefits of the adjoining land owned by him. They were not required to state the damages and benefits in money, but only the excess of damages remaining in the plaintiff's favor, after deducting the value of the benefits accruing from the im

provements to his adjoining lands. It was only the damages remaining after the deduction that the commissioners were required to award, and as there were no such damages, of course none could be awarded by them. This is the plain reading of the statute, and in this particular it does not appear to be in conflict with any provision in the constitution.

It was not indispensable to the validity of the action of the commissioners, that the plaintiff should be named in the report made by them. All that was required was that it should appear that his right to compensation had been considered and adjudicated by the commissioners. And that was made to appear, for the general statement included the property of all the owners taken for the street, except that of three specific instances, particularly and previously designated.

It sometimes becomes necessary to take the property of unknown owners for the use of the public. And if the validity of the proceedings depended upon their being accurately named, that could never be lawfully done, which might prove the source of public inconvenience and mischief. In those cases it would be utterly impracticable to comply, with such a requirements, if the constitution or the statute had made it. If the naming of the owner whose lands are to be taken for a public improvement, were material or essential to the preservation and maintenance of the rights secured to him by the constitution, then that would have to be done, no matter how inconvenient it might prove to be, before his property could be lawfully applied to public use. But that is not the case, for the constitution requires only that the owner shall be justly compensated for his property, when it may be taken for that purpose. And that can be done as well by describing or referring to him, as it can by naming him; where he may be clearly referred to or described, he is as completely ascertained and identified as though his name in fact were mentioned. And in such a case no difficulty could be ex-

perienced by him in obtaining the compensation designed for and awarded to him. In the present case the portion of the plaintiff's premises required for the widening of this street was described upon the map and referred to in the resolution. And in addition to that it must have been designated and shown upon the grounds by the permanent monuments the surveyor was required to place upon the lines of the street. He also appeared before the commissoners when they were considering his right to compensation. And when their report was made stating that as to all the land taken for the widening of the street, except the three instances specially mentioned, the benefits to the adjoining lands of the owners equalled the damages arising out of the appropriation of the land to be taken, he must have known that his case was included in that general statement. For he was as clearly designated and referred to by what was said in the report as though his case had been specially mentioned in connection with the insertion of his name. And within the principle already mentioned, which has previous to this time, in substance, received the approval of this court, that was sufficient to constitute a compliance with the provisions of the constitution and of the charter of the city of Syracuse. (*Buell* agt. *Trustees, &c.,* 3 *Com.,* 197). For the constitution neither expressly nor by necessary implication requires the owner to be named in order to render the proceedings valid, which may have been instituted for the purpose of taking his land.

The constitution merely requires that the person whose property may be taken for a public use, shall be compensated for it, and that the compensation shall be ascertained by a jury, or commissioners appointed by a court of record. This can be as completely accomplished by describing, as it can be by naming the person to be compensated. And that in effect was the rule adopted in *Buell* agt. *Trustees of Lockport,* (*sapra*). And it was also very distinctly maintained in *Monagle* agt. *County Commissioners* (8 *Cush.,* 360);

*Inhabitants of Reading* agt. *County Commissioners* (7 *Gray*, 109) ; *Hildreth* agt. *City of Lowell*, (11 *Gray*, 345, 352).

The charter of the city of Syracuse certainly does not require any more than that, where no award is to be made for damages exceeding the benefits resulting from the improvement to be made to the owners of the adjoining lands. Where the damages are found by the commissioners to exceed the benefits, there, and there alone, so far as they do exceed them, they are to be awarded to the owner. And even that could be done by clearly and fully describing him.

The omission to name the plaintiff in the report of the commissioners, could not be the source of any embarrassment in the assessment of the expenses of the improvement, and the damages payable to the persons having awards in their favor. For the duty of the commissioners making that assessment was confined to a simple estimate of the expenses of the work, and, after adding that to the amount of the awards, assessing it upon the property, legally bound to pay it, according to the direction given them by the charter of the city. And that they could do as well without the names of the owners, whose lands were to be appropriated for the street, as they could if every name had been fully and accurately stated in the commissioner's report. In discharging their duty, they could have no occasion for considering whose lands had been taken, or how they were to be compensated for them, beyond the awards actually made in specific sums of money by the commissioners. For the latter only were to be taken into consideration by them. And that was to be done, not for the purpose of reviewing the action of the commissioners, but merely for the purpose of ascertaining the aggregate amount to be assessed, as the costs of improvement.

As there was no such omission of duty on the part of the commissioners as rendered their proceedings invalid, it follows that the defendant had the legal right to take and appropriate the land in controversy.

The judgment should therefore be affirmed, with costs.

HUNT, Ch. J., (*dissenting*).—The difficulty in this case arises from an attempt on the part of the commissioners appointed to award damages for the property proposed to be taken, to state results rather than facts.

They awarded to the three persons named, damages in the aggregate of $8,500, and said that the owners of the other property proposed to be taken should be awarded no damages, because the benefit to their remaining property afforded them a sufficient compensation.

The map describing the property intended to be taken is not furnished to us, and we do not know the number of persons thus affected, or the extent of the property.

That there were several such owners appears from the statement quoted, and that the plaintiff was one of them is not denied in the pleadings, and was not controverted on the trial.

The commissioners should have ascertained the entire value of the property appropriated by the map for the proposed improvement, and have stated the amount of damages to each lot, with the owner's name, and gave the aggregate as the damages necessary to be paid.

They should then have found and recited that the adjoining property owned by Mr. Granger would be benefited to a certain amount to be specified, and that this benefit compensated for the damages before awarded, and the same as to the other owners whose property was thus taken. By omitting to give the facts, they involved the matter in serious embarrassment.

Mr. Leach, Mr. Winton and Mr. Judson were the commissioners who made the award of damages to which I have referred.

The assessment of these damages upon the property benefited by the improvement was made by another commission, consisting of Mr. Williams, Mr. Smith and Mr.

Porter. We see at once the error of the first proceeding and the force of the objection made by the plaintiff upon the trial, that there was no award specifying the damages sustained by the owners whose land was proposed to be taken, and no statement of the amount of benefit to the adjoining land.

How much damage had Mr. Granger sustained by the taking of that portion of his property, which was to be included in the proposed improvement?

Unless the commissioners know this fact, I see not how they could assess the amount upon the property benefited. The report is silent upon the subject of this amount. The commissioners had no possible legal means of obtaining this knowledge. They assessed upon Mr. Granger's remaining property, two hundred dollars, as the sum to be paid by him. This was necessarily an adjudication that his benefit was two hundred dollars more than the value of the property taken. This was a judgment that this last commission had no right to make. They had no authority to act upon the subject. Their only duty was to make a distribution of the amount of damage, which should have been previously ascertained by the prior commissioners, Mr. Winton, Mr. Leach and Mr. Judson. The award shows merely, that the plaintiff was "fully compensated by benefit" to the adjoining lands. The report of the last commission finds not only that, but that he has received $200 benefit in addition. It was impossible that the plaintiff should be properly charged with this sum, unless those charging it knew how much compensation he was entitled to for the property taken. (*Laws of* 1857, *pp.*, 135–137, §§ 1–4).

I consider this proceeding as fatally defective, and that it afforded no protection to the city of Syracuse or its agents.

The defendant insists that if the court are with the plaintiff on the merits of the case, that the action for an injunction to restrain the defendant from opening the street, will not be sustained. The defendant, however, expressly con-

cedes that such action will lie where the injury threatened is irreparable, where it is necessary to prevent multiplicity of suits, or where the proceedings create a legal cloud upon the title. The main object of the action is to restrain the performance of the work, and the injury of his property. It is different from the case of a bill to restain the collection of a tax.

Concurring substantially in the legal rule thus laid down, the plaintiff claims that the present case is within the rules of equity justifying a preventive remedy, and that the injury to be sustained will be serious and irreparable.

In its strict etymological signification there can scarcely be an irreparable injury to property, that is one which cannot by a sufficient amount of money, be restored, amended, or compensated for. The legal understanding of the term gives a more extended signification. Thus the loss of trade, the permanent ruin of a house, even the darkening of its windows, by which its daily enjoyment is rendered less available, fall within the idea. So the diversion of streams, the setting back of water-courses, the establisment of new ferries or turnpikes, the improper use of a public square, the disturbance of a burial-ground, are all deemed to be proper subjects of perpetual injunction.

So where a trespasser digs into and works a mine, to the injury of the owner; where timber is attempted to be cut by a trespasser in collusion with a tenant; or where there being a disputed boundary, one of the claimants is about to cut down ornamental trees on the disputed territory; and in all cases of timber, coals, ores, and quarries, where the party is a trespasser, or where he exceeds his rights, the injury is held to be within the description of an irreparable injury. (2 *Story Eq. Jur.*, §§ 926–929: *Mace* agt. *Trustees of Newburgh*, 15 *How.*, 161).

In the present case the premises are a city house and lot, which have been occupied by him for thirty-five years past. The west wall of his house is nine feet from the west line of

Granger agt. City of Syracuse.

his lot. He has a barn and carriage-house on his lot. The proposed improvement takes six feet of his lot, being also two-thirds of his carriageway and destroys it, and cuts off a portion about five feet of his barn. The barn must be entirely removed, and the premises left without one, or it must be moved on to that portion of the premises now used as a garden and for the cultivation of fruit.

I think an injury to this class of property, and of the character here suffered, where its value as ornamental property is interfered with, and its daily use for the comfort and satisfaction of the owner are materially affected, properly falls within that jurisdiction in which a court of equity exercises its preventive powers.

Judgment of general term should be reversed and a new trial ordered, costs to abide event.

Judgment affirmed.