In the Matter of the Application of THE CITY OF NEW YORK, Respondent and Appellant, Relative to Acquiring Title to Certain Lands Required for the Improvement of the Water Front Between West Eighteenth and West Twenty-third Streets.

CONSOLIDATED GAS COMPANY OF NEW YORK, Appellant and Respondent.

1. CONSTITUTIONAL LAW — EMINENT DOMAIN — OWNER OF LAND TAKEN FOR PUBLIC USE ENTITLED TO FULL VALUE OF LAND WITHOUT DEDUCTION FOR BENEFITS — NEW YORK CITY WATER FRONT. The provisions of section 822 of the charter of the city of New York (L. 1901, ch. 466) relating to the acquisition of lands for the improvement of the water front and authorizing the setting off of benefits against an award for land to be taken therefor must be regarded solely as an exercise of the power of eminent domain and are unconstitutional (Const. art. 1, § 6); since the full value of the land taken, in money alone, without any deduction for benefits which may result from such use, is the measure of that just compensation guaranteed the owner by the Constitution and especially where, as in this case, the city acquires the fee and is under no obligation to continue the public use for which the land was taken.

2. POWER OF LEGISLATURE TO SET OFF BENEFITS AGAINST AN AWARD AS A TAX IN LOCAL ASSESSMENT — U. S. CONST. FOURTEENTH AMENDMENT. Assuming that such provisions may be regarded as an exercise of the tax-

ing power of the legislature and not of the power of eminent domain, the power to tax is not unqualified and unlimited; if they are arbitrary and unreasonable in their operation, they are violative of the fourteenth amendment to the Federal Constitution and void; while the legislature under its taxing powers may impose the cost of an improvement in whole or in part upon the owners of property specially benefited thereby, all owners must be treated alike; where, as in this case, it arbitrarily selects one or more and exempts the others, depending upon accidental circumstances which have no just relation to the liability or immunity of the parties, its act is void.

*Matter of City of New York*, 120 App. Div. 849, modified.

(Argued November 20, 1907; decided December 20, 1907.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1907, which affirmed an order of Special Term confirming the report of commissioners of estimate and appraisal in condemnation proceedings.

The facts, so far as material, are stated in the opinion.

*John A. Garver* for Consolidated Gas Company, appellant and respondent. When only a portion of an entire tract of land is taken under the exercise of the power of eminent domain, the supposed benefit to the part remaining may not be applied in payment of the part taken. (*S. R. R. Co.* v. *Lirkover*, 176 N. Y. 301; *People* v. *Coler*, 166 N. Y. 1; Code Civ. Pro. § 3370; *Newman* v. *M. E. Ry. Co.*, 118 N. Y. 618, 624; *Bohm* v. *M. E. Ry. Co.*, 129 N. Y. 576, 592; *Bookman* v. *N. Y. El. R. Co.*, 137 N. Y. 302, 305; *Saxton* v. *N. Y. El. R. Co.*, 139 N. Y. 320; *People* v. *Mayor, etc.*, 4 N. Y. 419, 436; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *D. M. L. Co.* v. *Cook*, 3 App. Div. 164; *Matter of Tuthill*, 36 App. Div. 492.)

*Francis K. Pendleton, Corporation Counsel* (*Theodore Connoly, Charles D. Olendorf* and *Thomas F. Noonan* of counsel), for City of New York, respondent and appellant. The commissioners did not err in the principle adopted by them for ascertaining the compensation to be made to the

Consolidated Gas Company for the land constituting parcels Nos. 16 and 33. (Lewis on Em. Domain, § 470; Cooley's Const. Lim. [7th ed.] 820; *Livingston* v. *Mayor, etc.*, 8 Wend. 85; *Betts* v. *Williamsburg*, 15 Barb. 225; *Matter of Furman St.*, 17 Wend. 649; *Eldridge* v. *City of Binghamton*, 120 N. Y. 309; *Bohm* v. *M. E. R. R. Co.*, 129 N. Y. 576; *Granger* v. *City of Syracuse*, 38 How. Pr. 308; *Whitney* v. *State*, 96 N. Y. 240; *Genet* v. *City of Brooklyn*, 99 N. Y. 296; *Bauman* v. *Ross*, 167 U. S. 548; *Wright* v. *Davidson*, 181 U. S. 385.)

CULLEN, Ch. J. Under the provisions of chapter 16 of the Greater New York charter (L. 1901, ch. 466) the dock commissioner of the city was empowered to acquire such lands, wharves, piers, easements and other property rights as might be necessary for the execution of the plans for the improvement of the water front of the city of New York theretofore adopted or that might thereafter be adopted by the department of docks and the commissioners of the sinking fund. These proceedings were instituted under said charter to acquire several pieces of land owned by the appellant, the Consolidated Gas Company of New York. The award of the commissioners as to such pieces was confirmed by an order of the Special Term and that order was affirmed by the Appellate Division by a divided court. Both parties have appealed to this court, each complaining of the award of the commissioners in many respects. Of the conflicting contentions made by the parties it is sufficient to say that in our opinion they are, with one exception, without merit and need no discussion. The exception referred to, however, presents a question of great importance and of much conflict in the decisions of the various states. As to two pieces of the company's land parts only of such pieces or tracts were sought to be acquired by the city. While the commissioners found that such parts were of substantial value, they also found that the benefit which would accrue from the improvement to the remainder of such tracts was greater than the value of the

lands taken, and hence they made the company no award therefor.

The authority for the rule of compensation thus adopted by the commissioners is based on section 822 of the charter, which enacts as to lands taken for water front improvement: "If all of the property of such owner is taken, the compensation awarded shall be the fair and just value of the said property. If the property of the riparian proprietor has been built upon or improved, and if such buildings or improvements are upon a single tract contiguous to or adjoining lands under water, or which were originally under water, and used in connection therewith, and part only of such property is proposed to be taken, the fair and just value of the entire premises shall first be ascertained, and then there shall be ascertained the like value of the premises in the condition in which they will be after the part is taken, and the difference in value, be it more or less than the separate value of the part taken, shall constitute the measure of compensation." Despite the strenuous argument of the counsel for the gas company, we are clear that this provision is applicable to the lands taken from the company, and that the action of the commissioners was in accordance with the rule laid down by the statute. Therefore, there is but a single question before us. That is, whether the statutory rule of compensation conforms to the requirement of the Constitution that private property shall not be taken for public use without just compensation. (Art. 1, § 6.) That this is a judicial question was held by the Supreme Court of the United States in *Monongahela Navigation Co.* v. *United States* (148 U. S. 312), where, in declaring certain provisions of the Federal statute as to condemnation unconstitutional and invalid, the court, through Justice BREWER, said: "By this legislation Congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial and not a legislative question. * * * It does not rest with the public, taking the property, through Congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be

23

the rule of compensation." Of course, this is true only in one direction; that is to say, that as the right to exercise the power of eminent domain must proceed from legislative authority, the legislature may require more liberal compensation than that which would satisfy the constitutional requirement, but it cannot direct that anything less than just compensation shall be made.[?] (Before proceeding to the discussion of whether the compensation provided by the charter is constitutionally adequate, special attention must be called to the character of these proceedings. Though in the title of the proceeding and in the prayer of the petition, reference is made to commissioners of assessment, as well as of estimate, no authority is given by the charter to impose any local assessment on adjacent property for the cost, in whole or in part, of the water front improvement; and as matter of fact no assessment as such was levied or sought to be levied in this proceeding. It is also to be noted that the lands sought to be acquired are not necessarily to form a part of a street, but plenary power is given to the commissioner over their use for wharf, pier and similar purposes.

The question before us has been the subject of many diverse views in the courts of the various states. Mr. Lewis, in his work on Eminent Domain, thus states the condition of the authorities, dividing them into five classes: 1. States holding that benefits cannot be set off at all (Mississippi). 2. Holding that special benefits may be set off against the remainder, but not against the part taken (Maryland, Nebraska, Tennessee, Virginia, West Virginia, Wisconsin). 3. Holding that benefits both general and special may be set off against the remainder, but not against the part taken (Georgia, Louisiana, Kentucky, Texas). 4. Holding that special benefits may be set off against the part taken and the remainder (Connecticut, Kansas, Maine, Minnesota, Missouri, New Hampshire, North Carolina, Oregon, Pennsylvania, Virginia, District of Columbia), 5. Holding that benefits both general and special may be set off against the part taken and the value of the remainder (Alabama, California, Delaware,

Illinois, Indiana, New York, Ohio, Oregon, South Carolina). It would be impossible, within the limits of an opinion, to discuss the various decisions cited by the learned author, or to examine in every case the accuracy of his classification. · It may be observed, however, that Illinois, whatever may have been the earlier decisions in that state, cannot now be placed in the fifth class, because the later cases hold that the owner must be paid the full value of the land taken in money alone without regard to the benefits he may receive. (*Carpenter* v. *Jennings*, 77 Ill. 250; *Chaplin* v. *Highway Commrs.*, 129 id. 651; *Schroeder* v. *City of Joliet*, 189 id. 48.) With reference to this state also I think the author has fallen into error, and that with us the question is still an open one. In the several cases cited by the Supreme Court of the United States in *Bauman* v. *Ross* (167 U. S. 548) and by Mr. Lewis (*Livingston* v. *Mayor, etc., of New York*, 8 Wend. 85; *In re Furman St.*, 17 id. 649; *People* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 419; *Genet* v. *City of Brooklyn*, 99 id. 296; *Granger* v. *Syracuse*, 38 How. Pr. 308; *Rexford* v. *Knight*, 15 Barb. 627), with the single exception of *Rexford* v. *Knight* (*supra*), the proceedings, the validity of which were attacked, were dual, involving not only an award of compensation for land taken, but an assessment on adjacent property for the cost of the improvement. I cannot find that in any of those cases the owner was awarded anything less than the full value of his land, the attack being made on the provision for setting off the assessment against the award. It is the blending of the two powers, that of eminent domain and that of taxation, which has led to the confusion as to the effect of the decisions of this state. *Rexford* v. *Knight* (*supra*) arose over lands taken for the canal under a statute which provided that in making awards benefits should be considered. There was no local assessment in that case. The General Term of the Supreme Court held the statute valid. It based its decision on the authority of *People* v. *Mayor etc., of Brooklyn* (4 N. Y. 419), but an examination of the elaborate opinion of Judge RUGGLES in that case will

show that the whole question involved and discussed was the validity of the local assessment. *Genet* v. *City of Brooklyn* (99 N. Y. 296) involved the power to offset assessment against award. The argument there made was that " to reduce the award for the land taken, by the assessment for benefit on the residue of the same lot or parcel, is not just compensation within the constitutional requirement." Of this claim, Judge ANDREWS said : " The argument fails in omitting to separate the two powers exercised by the legislature in framing the act of 1868, viz., the power of taxation and the right of eminent domain. The constitutional requirement that just compensation shall be made for lands taken for public use must be absolutely performed, and a mere colorable compliance will not satisfy the constitutional guaranty. The right to compensation is the right of the citizen whose land is taken, which the legislature can neither ignore nor deny. The power of taxation, on the other hand, is vested in the legislature and is practically absolute, except as restrained by constitutional limitations." Since these decisions the question has been discussed, though not decided, in two later cases in this court. In *Eldridge* v. *City of Binghamton* (120 N. Y. 309) a former owner sued to recover a part of the bed of an abandoned canal which the state had conveyed to the defendant. The condemnation was under the law already referred to, which directed the deduction of benefits from any award for land taken. The validity of the statute was challenged, but this court declined to decide the question, defeating the plaintiff on the ground of the Statute of Limitations. In *Bohm* v. *Metropolitan Elevated R. Co.* (129 N. Y. 576) Judge PECKHAM said as to the rule of compensation : " Before entering on a discussion of these matters I think it proper to say that I should hesitate to admit the correctness of the claim made by defendants, that where private property is taken by a mere business corporation, as for a public use under the granted power of eminent domain, the legislature could provide that such property could be paid for by benefits accruing to the landowner's adjacent property consequent upon the

taking. This is the case in regard to municipal corporations where land is taken for a public street, or other public and municipal purposes, and where the benefits arising to the adjacent lands of the owner whose property is taken may be set off against the value of the land taken. So in the case of property taken by the state for canal or other public purposes, where the owner of the land taken was frequently paid its value by the benefits received to his adjacent land not taken. *The principle underlying these cases is, however, the right of the municipality or state to tax the owners of the land left in order to pay for the land taken*, on the ground that they are specially benefited by the taking, and *hence should be specially taxed for the payment of the land.* The case of *Genet* v. *City of Brooklyn* (99 N. Y. 296) is no authority for a contrary view, for I think it supports that which I have suggested. A mere trading or business corporation has no power of taxation, and the state could not delegate such power to it." This review of the cases shows that there is no controlling decision of the court or of its predecessor, the Court of Errors, on the question presented, and we must determine it on principle.

We will first consider the proceedings as solely in the exercise of the power of eminent domain. It is the settled law of this state that the character and quantity of the estate in lands to be acquired for public use rests wholly in the determination of the legislature. It may, as in this case it has, authorize the acquisition of the fee, in which case there is no right of reversion left in the original owner. In *Heyward* v. *Mayor, etc., of New York* (7 N. Y. 314) the city, in 1818, acquired in fee by condemnation lands for an almshouse. In 1845 the almshouse was removed to Blackwell's island and the land on which it formerly stood was divided into city lots and sold to various purchasers for private use. It was held that the original owner had no right to the reversion and that he could not restrain the sale. In *Brooklyn Park Commrs.* v. *Armstrong* (45 N. Y. 234) the city had acquired in fee by condemnation for the purpose of a public park various lands on both sides

of Flatbush avenue, a main thoroughfare in that city.  Subsequently it appeared undesirable to include that portion of the lands lying to the east of the avenue in the proposed park. It never was improved and the legislature authorized the sale by the city to private parties.  It was held that the acquisition having been made by the city in good faith for a public purpose, on the abandonment of that purpose the city could sell the lands for private use, and that no right or interest remained in the original owner.  This seems to be the doctrine generally prevalent throughout the country.  (Lewis on Eminent Domain, §§ 277, 596.)  Under the act of 1854, railroad companies in this state were authorized to acquire in fee lands for station and depot purposes.  But it has also been held that where land has been acquired for a public purpose and the public use discontinued the landowner has no claim for such abandonment.  In *Whitney* v. *State of New York* (96 N. Y. 241) the facts were similar to those in the case of *Eldridge* v. *City of Binghamton* (*supra.*).  Lands of the claimant's ancestor or assignor had been condemned for the Chenango canal, which having been subsequently abandoned, were conveyed by the state to the city of Binghamton.  The plaintiff presented to the Board of Claims a claim for damages resulting from the abandonment of the canal.  The claim was held invalid.  This court said : " It would be going very far to hold that the state, by taking the land for the benefit of the canal, entered into an obligation or contract that its use should be in perpetuity, and neither law nor equity sustains any such construction of the statute."  If then, under the settled law of this state, land acquired in fee for a public use can be forever diverted from the owner, and there is no obligation to continue the public use for which it was appropriated and no cause of action arises in favor of the landowner for the abandonment of the improvement, how is it possible to assert that the benefits that result from such an improvement can be considered as compensation for deprivation of the land ?  With the utmost deference to the opinions of the learned courts of other states and of the United States, it

seems to me that the question admits of but one answer.   I
frankly concede that mere theoretical possibilities of what
may occur ought not to control the practical administration
of the law, but I have cited three cases that have actually
occurred in this state.   In the *Heyward* case probably no
real damage could have occurred to the landowner by the
removal of the almshouse, but in the *Brooklyn Park* case
and in the canal cases injury to the adjacent property by the
abandonment of the improvement might have and in all proba-
bility did actually occur.   In the *Brooklyn Park* case the con-
templated improvement was abandoned before its prosecution
was ever actually commenced.   But in that case the land-
owner had no just cause of complaint because he was paid the
full value of his property and subjected to no assessment.   In
the case of the abandoned canals the landowners certainly lost
compensation for their property.   It may be further said that
with the exception of the law regulating compensation for
canals, I do not now recall any statute of this state, except
the one now before us, which has assumed to offset benefits
against the value of the land taken in a proceeding strictly in
the exercise of the power of eminent domain.   A curious result
that may arise from such a rule of compensation is found
in *Matter of 48th St.* (19 App. Div. 6C2).   Under the char-
ter provisions regulating street openings in the city of
Brooklyn commissioners of appraisal merely made the award
for land taken.   The local assessments for benefits were made
by the board of assessors, a body of permanent officers.   The
proceedings, therefore, of eminent domain and of taxation
were wholly distinct.   The commissioners in making their
award deducted supposed benefits.   Had the award been
allowed to stand the landowner would have had to pay a
double share of the cost of improvement, *first*, by deduction
from his award, and *second*, by the assessment laid on his
adjacent property by the board of assessors.   The Appellate
Division of the Supreme Court set aside the action of the
commissioners, holding that in such a situation no benefits
could be deducted from the awards in the appraisal proceed-

ings, yet, if the true rule of compensation justifies the deduction for benefits, I cannot see why, as a matter of strict law, the commissioners are not justified in their action, regardless of the inequitable results that would flow from it. I appreciate fully that it is not possible to lay down a fixed rule on this subject which will in every case work exact justice. That benefits may not be set off against consequential damages to the part of the land not taken I do not assert. On the contrary, this would generally accomplish an equitable result (*Newman* v. *Metropolitan El. Ry. Co.*, 118 N. Y. 618; *Bohm* v. *Metr. El. Ry. Co., supra*), but this much we can hold, and I think we should hold, that in no case should an award be made for less than the value of the property actually taken by condemnation. In that position the courts of this state will not stand alone, but will have the support of those in the states already enumerated in the first three of Mr. Lewis' classes, and in addition thereto, the courts of Illinois.

It remains to be considered whether the charter provisions under discussion can be supported as an exercise of the power of taxation, for, although the legislature has not labeled the set off of benefits against an award as a tax or local assessment, still if it had the power to impose such a tax, a failure to properly denominate it could not affect the validity of the statute. It is unquestionable that the legislature might defray the cost of the improvement either in whole or in part, by special tax or assessment on the adjacent property, and it also might have empowered the local authorities to do the same thing. At an early period in this state it was assumed, both by courts and the profession, that the power of taxation possessed by the legislature was practically unqualified and unlimited. Such probably was the case. That, however, is not the law as it exists to-day. The change has not been effected by any new provision in the Constitution of this state, but by the adoption of the fourteenth amendment to the Federal Constitution, and the doctrine to which we are about to give effect has been declared by that court whose decisions on Federal questions are controlling. In *Connolly* v. *Union Sewer Pipe Co.* (184

U. S. 540) a statute of Illinois directed against trusts and combinations was held to contravene the Federal Constitution because it arbitrarily excepted from its scope and operation combinations in agricultural products and live stock.    It was there said : " Arbitrary selection can never be justified by calling it classification.    The equal protection commanded by the Fourteenth Amendment forbids this."    We followed that authority in *Matter of Pell* (171 N. Y. 48).    There a provision in the Inheritance Tax Law imposing a tax on the non-execution of powers of appointment created prior to the enactment of the law, failing as an inheritance tax, was sought to be upheld as a tax on property.    We held that the law could not be sustained ; that the legislature could not arbitrarily select for taxation out of the general mass of property certain property simply because the title to it which had accrued prior to the enactment of the statute had passed under a will containing a power of appointment unexercised.    In the very recent case of *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8) we held that a law imposing a tax on the sale and transfer of shares of stock at a specific rate per share, instead of upon the real or nominal value, was not a justifiable method of taxation, but was arbitrary selection.    Referring to the decision of the Supreme Court of the United States, Judge VANN said : " By this we do not understand that great court to mean that the relation must necessarily be ' reasonable and proper ' according to the judgment of reviewing judges, but that the court must be able to see that legislators could regard it as reasonable and proper without doing violence to common sense.    In other words, there must be enough reason for it to support an argument, even if the reason is unsound."    Treated as an exercise of the power of taxation, it would be difficult to imagine a selection for taxation, both as to persons to be taxed and the amount of the tax, more arbitrary and capricious than the statutory provision before us.    Liability to and amount of tax is left to pure accident, which can have no just relation to the subject.    It is true that an owner, a part of whose land is taken, cannot be made to contribute to the

expense of the improvement more than the benefit that accrues to his remaining land, but his neighbor, the situation of whose land may be exactly the same as that of the remaining lands first owner, if none of his land is taken, pays nothing. So also in the case of two landowners from each of whom land is taken, the one from whom the least land is taken may have the greater benefit to his remaining land. While ,it may be just and equitable in a certain sense as between the owner and the public that the owner should contribute towards the cost of the improvement, it is certainly most inequitable as between him and other owners. In such a case equity requires equality, and while doubtless the state might, under the power of taxation, impose the cost of the improvement in whole or in part on the owners of property specially benefited thereby, it cannot arbitrarily select one or more and exempt the others, depending on accidental circumstances which have no just relation to the liability or immunity of the parties. In other words, to paraphrase the words of my brother VANN in the *Farrington Case (supra)*, there is not enough reason for the distinction to support an argument in its favor.

In conclusion a word should be said as to the case of *Bauman* v. *Ross* (167 U. S. 548), decided by the Supreme Court of the United States. In that case the act of Congress, the validity of which was upheld, directed the laying out and construction of highways in the District of Columbia and authorized the acquisition of lands for such purpose by condemnation. It provided that in estimating damages for the taking of any land the jury should take into consideration the benefit to the owner by enhancing the value of the remainder of his land, and the court was authorized to require that the damages and benefits should be stated separately. The validity of this provision was upheld, and it must be conceded that the opinion of the court deals principally with the question of whether such rule of compensation is a compliance with the provision of the Constitution. But the statute also provided for an assessment of one-half the cost of any improvement upon the adjacent property, and directed that in case any

sum had been deducted for benefits from the award for land taken, allowance for such deduction should be made in determining the amount of the assessment. The proceeding was, therefore, of the dual nature already alluded to, being not only an exercise of the power of eminent domain but also of the taxing power. I feel by no means confident the court would have upheld the statute had it not provided for the allowance referred to on the assessment, and even despite that provision it seems to me that cases might arise under the statute where one owner would pay his share of the whole cost of the improvement, while other owners would only be subjected to one-half of such cost.

The orders of the Appellate Division and of the Special Term, so far as they relate to parcels 16 and 33, should be reversed and the proceedings remitted to the commissioners for further report in accordance with this opinion. In all other respects the order of the Appellate Division is affirmed, without costs in this court to either party.

Edward T. Bartlett, O'Brien, Vann, Werner, Willard Bartlett and Chase, JJ., concur.

Ordered accordingly.