Matter of the Application of the City of Rochester to
   Acquire Certain Lands for the Opening and Exten-
   sion of University Avenue.

(County Court, Monroe County, November, 1913.)

Condemnation proceedings — appointment of commissioners of appraisal
   in, to open and extend streets — objection raised by landowners that
   under city charter a railroad company should have notice of the
   proceedings — objection as to constitutionality of ordinance — map
   of property sought to be taken not filed until more than five years
   after passage of ordinance authorizing said improvement — con-
   tracts — city of Rochester.

   On the application of a city for the appointment of com-
   missioners of appraisal in a proceeding to open and extend
   a street, an objection raised by two landowners that under a

provision of the charter a railroad company should have notice of the proceedings, as it had an easement in the lands sought to be taken and was a necessary party to the proceeding, will be overruled on the grounds that it appears that the charter only requires notice of the application "to be served on each of the owners of the real estate or rights or easements therein sought to be taken," and that there is nothing in the ordinance authorizing the improvement or in any of the papers from which it can be determined that there is any intention to take anything belonging to the railroad company; the fact that the railroad company was not served was not available to other landowners.

A contract is property and may be taken in condemnation proceedings for public use, and an objection by a landowner that the obligation of a contract between him and the railroad company made prior to the adoption of the ordinance authorizing the street improvement, the nature of which contract does not appear, would be violated by a condemnation of his land and, therefore, the ordinance was contrary to the United States Constitution, will be overruled.

An objection that said ordinance was unconstitutional, in that it proposed to take the lands of defendant without adequate compensation and assess the entire cost and compensation to be paid upon the same person and corporation from whom said lands were taken, will be overruled on the ground that the objection failed to distinguish between the right to take land by eminent domain and the right of taxation.

In the absence of proof of bad faith on the part of the city, or any officer thereof, an objection, that the application for the appointment of commissioners of appraisal was not made in good faith for the purpose of laying out a highway but for the purpose of enabling the city to construct a sewer, will be overruled.

Where it appears that provisions of the city charter that whenever the common council determines to purchase any real estate or rights or easements therein it must pass an ordinance, etc., have been strictly complied with in the ordinance under consideration, an objection that the court was without jurisdiction to entertain the proceeding for the reason that no negotiations have been made between the commissioner of public works and the landowners who make objections will be overruled.

> Where the map of the property sought to be taken by the city was not filed as required by the charter until after the lapse of five and one-half years after the passage of the ordinance authorizing the street improvement, and in the meantime a corporation had purchased certain land without any knowledge or information, so far as appears, that the city desired part of such property for public use, and no claim is made that any attempt was ever made by the city to purchase from said corporation, an objection that no negotiations have been had between it and the commissioner of public works will be sustained.

APPLICATION for the appointment of commissioners of appraisal.

Albert L. Shepard, assistant corporation counsel, for city.

Smith & Hebbard, for landowners, Thomas E. Blossom and the Rochester Last Works.

BARHITE, J.  The city makes application for the appointment of commissioners of appraisal to decide upon the compensation to be awarded the owners of the land to be taken for the opening and extension of University avenue.  Two of the landowners appear and file objections to the appointment upon several grounds.  It appears to be necessary to discuss the objections which have been made.

One objection is that all persons having an interest in the lands and premises described have not been served with copies of this application as required by section 437 of the charter; that under the provisions of that section the Rochester, Syracuse and Eastern Railroad Company should have had notice as it has an easement in the lands sought to be taken and is a necessary party to this proceeding.

Several answers may be made to this objection. The charter only requires notice of the application " to be served on each of the owners of the real estate or rights or easements therein sought to be taken."

There is no evidence before the court that the lands of the railroad company are to be taken. The map filed does not indicate that the railroad company has any interest in the matter. There was some discussion between counsel upon the hearing upon this point, but there is nothing either in the ordinance or in any of the papers from which it can be determined that there is any intention on the part of the city to take any land belonging to the railroad company.

Again, I do not think that the objecting landowners can make objection to the fact that the railroad company was not served.

" One person cannot avail himself of the failure to give notice to another." Lewis Em. Dom. (3d ed.) § 584.

Further, it is a general rule that where lands have once been taken or acquired for public use they cannot be taken for another public use, unless the intention of the legislature that such lands should be so taken is shown by express terms or necessary implication. New York C. & H. R. R. R. Co. v. City of Buffalo, 200 N. Y. 113.

Objection is also made that previous to the time of the adoption of the ordinance Mr. Blossom had entered into an agreement with the railroad company, and that the obligation of this agreement would be violated by the condemnation of the lands owned by Mr. Blossom, and that, therefore, the ordinance is contrary to the Constitution of the United States.

The answer to this objection is that in condemnation proceedings all rights and interests of the parties can be adjusted, and the loss sustained by the landowners

by the taking of the land must be compensated for by the city. What this agreement was does not appear.

A contract is property and like any other property may be taken in condemnation proceedings for public use. Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685.

Objection is also made that the ordinance upon which the proceeding is based is contrary to the Constitution of the state of New York, in that it proposes to take the lands of the defendants without adequate compensation; that the ordinance by the terms assesses the entire cost and compensation to be paid to such owners upon the same person and corporation from whom said lands were taken.

This objection fails to distinguish between the right to take land by eminent domain and the right of taxation. To take the land is one thing; the manner in which the compensation for the land shall be paid is another thing, and the two are entirely separate.

In Matter of City of New York, 190 N. Y. 350, the Court of Appeals quotes with approval the language of Judge Peckham in 129 New York, 576, as follows: " The principle underlying these cases is, however, the right of the municipality or state to tax the owners of the land left in order to pay for the land taken, on the ground that they are specially benefited by the taking, and hence should be specially taxed for the payment of the land."

The objection is also made that the provisions of the charter are unconstitutional for the reason that that act does not provide for a hearing before a competent and impartial tribunal upon the question of the necessity of the proposed highway, and whether or not the lands sought to be taken are for public purposes.

The charter does provide for such hearing. Section 113 is to the effect that in the case of a public

improvement or work involving a local assessment the council must first pass an ordinance, and that thereafter notice must be published specifying the improvement or work, among other things, and designating a time at which allegations will be heard by the common council. At such hearing every question properly involved in the ordinance can be discussed and objection made to any part thereof by any interested person.

It is well settled that when the uses to which the property is to be put are in fact public, the necessity or expediency of taking private property for such uses by the exercise of the power of eminent domain, the instrumentalities to be used and the extent to which such rights shall be delegated are questions appertaining to the political and legislative branches of the government. While on the other hand the question whether the uses are in fact public so as to justify the taking by condemnation of private property is a judicial question to be determined by the courts. Matter of Application of Niagara Falls Whirlpool R. Co., 108 N. Y. 375, 383.

Taking property for use as a public street is so clearly a public use, and that fact has been so thoroughly settled, that citation of authority is unnecessary.

It will be useful, however, to call the attention to the language of the Court of Appeals in People v. Adirondack R. Co., 160 N. Y. 225, 238, 239: " The state needs the property and takes it, and while the citizen cannot resist, he has the power to insist upon just compensation to be ascertained by an impartial tribunal. It is a compulsory purchase by public authority, and the individual receives money in the place of the property taken. He has a right to his day in court upon the question of compensation, but he has no right to a day in court on the question of appro-

priation by the state unless some statute requires it. There is no necessity for any safeguard against taking, because the right to take is all there is of the power of eminent domain, and is necessarily conceded to exist when the existence of the power is admitted. Safeguards become necessary only when the question of compensation is reached, and then the courts are careful to see that the owner receives all that he is entitled to. * * * If the use is not public, the statute authorizing condemnation is void, but this question of law need not be settled in the proceeding to take, as it can be raised by the property owner in a variety of ways.''

It is also claimed that at the time of the adoption of the ordinance in March, 1908, the lands and premises described in the ordinance did not connect with University avenue, and did not and would not become an extension of that avenue.

There is no evidence before the court by which this question can be determined.

'' Private property taken for a highway is taken for public use * * * though it be a mere *cul de sac*.'' Lewis Em. Dom. § 259.

It is claimed that the application for the appointment of commissioners is not made in good faith for the purpose of laying out a highway, but is made for the purpose of enabling the city to construct a sewer.

It is sufficient to say upon this claim that there is no evidence of bad faith on the part of the city or any officer connected with the municipality. There has been great delay, which I shall have occasion later to discuss, but this delay does not show any bad faith, and in the absence of any evidence whatever upon the point raised the objection in question cannot stand.

The objection is made by both of the landowners who have appeared that the court is without jurisdic-

tion to entertain this proceeding for the reason that no negotiations have been had between the commissioner of public works of the city and the landowners who make the objection.

The charter of the city prescribes the method which must be pursued and the steps to be taken when the municipality desires to condemn lands for public use.

Section 89 provides that whenever the common council determines to authorize the purchase of any real estate or rights or easements therein, it must pass an ordinance containing, among other things, a provision directing the commissioner of public works to purchase the same at a price approved by the board of estimate and apportionment, and the ordinance must further direct the corporation counsel in case the commissioner of public works is unable to purchase such real estate to institute condemnation proceedings for the acquirement of the property.

An examination shows that the provisions of the section quoted were strictly complied with in the ordinance under consideration.

Section 101 of the charter provides that whenever an executive or administrative function is by law or ordinance of the common council required to be performed the same must be performed by the proper executive or administrative department, board, bureau or officer designated in the law or ordinance.

It plainly appears, under the provisions to which I have called attention, that an attempt to purchase the property at a price approved by the board of estimate and apportionment by the commissioner of public works is a condition precedent to the right of the city to condemn. Until negotiations sufficient to comply with the terms of the charter have been had the city cannot take the property under the power of eminent domain.

The charter nowhere provides what special steps must be taken or how far the commissioner of public works must go in his attempt to follow the directions of the common council and purchase the property wanted.

It is obvious that it would be very difficult to lay down any general rule under which the commissioner can work, because the circumstances of each case must be different. What in one case would be a compliance with the charter in another case would be totally insufficient.

In the case of Mr. Blossom it appears that the commissioner wrote to him two letters, one dated April 10, 1908, and the other dated February 11, 1911. In each of these letters Mr. Blossom was invited to call upon the commissioner with regard to the extension of University avenue, and the ordinance under which the commissioner was to act was designated.

In the letter of February 11, 1911, it is stated that the commissioner had been authorized by the common council to purchase the property owned by Mr. Blossom which was needed for the improvement in question.

In response to one of these letters, which one it does not appear, Mr. Blossom, with his attorney, called upon Mr. Elwood, the commissioner. It is apparent that in that conversation the extension of University avenue was discussed. The details of the conversation were not remembered by the commissioner. This is not strange when we take into consideration the numerous matters of the same kind which pass through his office in the course of a year. It does appear, however, that Mr. Blossom, through his attorney, indicated to the commissioner that there was some agreement outstanding by which there was to be a transfer of lands between the city and the property owners.

There is in evidence a petition which had been presented to the common council previous to the adoption of the ordinance in March, 1908, in which Mr. Blossom, with two other owners, had offered to dedicate the land needed for University avenue, and from the contention of Mr. Blossom it was his understanding that in return certain lands were to be conveyed to him and others who were interested.

While the evidence of the landowner is to the effect that the commissioner did not ask for a price, and no price was named, yet it was evident that what was said by Mr. Blossom and his attorney convinced the commissioner that it would be impossible to purchase the land on the ground that there was a previous agreement existing which provided for the opening of the street in another way than by condemnation proceedings.

The commissioner had no power to make any offer which would be binding upon the city. That power rested with the board of estimate and apportionment, and unless he had previously obtained from that board authority to fix a price such action on his part would be useless.

It is sufficient to say that Mr. Blossom received the letters of the commissioner; that he called in response to one letter; that from the conversation and the letters he knew what the commissioner desired.

I think the commissioner was justified in holding that he could not purchase the land from the attitude taken by the owner, and that so far as Mr. Blossom was concerned his duty required him to report that he was unable to buy the land.

With reference to the property owned by the Rochester Last Works the facts are somewhat different.

At the time the ordinance in question was passed the property now owned by that company was owned by

the Non-rust Tinware Company.  The latter company became insolvent and a temporary receiver was appointed on March 5, 1910.  The receiver continued in office until November 10, 1911.  The property was bought by the Rochester Last Works by deed dated September 8, 1911, and recorded September 9, 1911.

There is no evidence, except the general custom of the office of the commissioner of public works, that any attempt was ever made to buy the property of the Non-rust Tinware Company.  The president of that company and the attorney, who was also one of the directors, testified that they had no knowledge of any application made by the city for the purchase of that part of their property wanted for the extension of University avenue.

There is a letter in evidence sent by the commissioner of public works to the attorney for the company, dated February 11, 1911, but at this time the company was in the hands of a receiver, and the receiver gave evidence to the effect that he had no recollection of having received the letter in question.

The evidence on behalf of the city was a copy of the letter produced from the letter book from the office of the commissioner of public works, and evidence to the effect that it had been mailed.  But the record is entirely wanting of any evidence which would show that the letter mailed reached the Non-rust Tinware Company or its receiver.

To simply mail a letter and rest upon that fact without knowing whether the letter reaches the person for whom it was intended and to take no further steps is not a compliance with the statute.

No claim is made that any attempt was ever made to purchase the property from the present owner, the Rochester Last Works.

The map and the ordinance of the property wanted

by the city were not filed in the offices of the city clerk and the county clerk until September 12, 1913, over five and a half years after the passage of the ordinance. See Charter, § 436.

When this map and the ordinance were filed notice was given to the world that the city intended to take the property, and the rights of any purchaser would be subject to the rights of the city. Charter, § 439.

But in the meantime the Rochester Last Works had purchased this property without any knowledge or information, so far as appears, that the city desired part of the property for public use.

It appears indirectly in the record that a previous conveyance had been made by the Non-rust Tinware Company or its receiver.

If it should be held that the property can be taken in this proceeding, then the protection given to the landowner by the statute is entirely taken away.

It was obviously the intent of the lawmakers that when a municipality desires to take the land of a private person for public use, that person should have the opportunity to sell the land wanted without the expense and inconvenience of a proceeding in the courts, and this is a substantial right which should be protected in every instance.

If a proceedings to condemn lands may be begun and then no steps taken for several years afterward to warn intending purchasers of the intention of the city, we will have a situation in which it would be unsafe to purchase property. No limit of time is named in the charter in which such proceedings must be finished, but I think a reasonable interpretation of the statute contemplates a proceeding in which the various steps are to be taken with reasonable promptness, otherwise there would result unjust results not contemplated or intended.

39

In Lake Shore & Michigan Southern R. Co. v. Roach, 80 N. Y. 339, 344, the court in discussing the facts of that case, says: " It cannot be doubted that the lawmakers did not intend that this law should be applied in such cases; and yet they are within the letter of the law. The lawmakers cannot always foresee all the possible applications of the general language they use; and it frequently becomes the duty of the courts in construing statutes to limit their operation, so that they shall not produce absurd, unjust or inconvenient results not contemplated or intended. A case may be within the letter of the law, and yet not within the intent of the lawmakers, and in such a case a limitation or exception must be implied."

The objections of Thomas E. Blossom are overruled. The objection of the Rochester Last Works that no negotiations have been had between the commissioner of public works and the Rochester Last Works is sustained. The other objections are overruled. The order to be entered will be settled by me upon two days' notice.

Ordered accordingly.